IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
SEP 16 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

LIBERTARIAN PARTY OF VIRGINIA, et )
al., )
 )
    Plaintiffs, )
 )
    v. ) 1:10-cv-615 (LMB/TCB)
 )
VIRGINIA STATE BOARD OF ELECTIONS )
 )
    Defendant.

## MEMORANDUM OPINION

### I. Background

This action challenges the constitutionality of Va. Code
§ 24.2-506, which requires individuals who circulate ballot
petitions ("circulators") to be qualified to vote in the specific
congressional district where they circulate those petitions and
witness voters' signatures. Plaintiffs include the Libertarian
Party of Virginia; its prospective candidate for the U.S. House
of Representatives from Virginia's Eighth Congressional District
in the November 2, 2010 general election (Matthew Mosley); one of
Mosley's supporters who is a resident of the Eighth Congressional
District (Catherine Barrett); one supporter who is a resident of
Virginia but not of the Eighth Congressional District (William
Redpath); and another supporter who is a resident of the District
of Columbia (Robert Benedict). Plaintiffs filed suit on June 3,
2010 under 42 U.S.C. § 1983, alleging that the in-district
residency requirement for circulators violates their First and

Fourteenth Amendment rights by preventing their candidate of choice from being placed on the ballot.

Under Virginia law, to be listed on the ballot for the November 2, 2010 general election, prospective candidates for the U.S. House of Representatives must have filed, by 7:00 pm on June 8, 2010, a petition signed by at least 1,000 "qualified voters" for that office. Moreover, the signatures on the petition must have been witnessed by circulators who are themselves qualified voters or qualified to register to vote for that office. Specifically, Va. Code § 24.2-506 provides that:

> The name of any candidate for any office, other than a party nominee, shall not be printed upon any official ballots provided for the election unless he shall file along with his declaration of candidacy a petition therefor, on a form prescribed by the State Board, signed by the number of qualified voters specified below[1] after January 1 of the year in which the election is held and listing the residence address of each such voter. Each signature on the petition shall have been witnessed by a person who is himself a qualified voter, or qualified to register to vote, for the office for which he is circulating the petition and whose affidavit to that effect appears on each page of the petition.

Va. Code § 24.2-101 defines "qualified voter" for the purposes of Virginia's election statutes as "a person who is entitled to vote pursuant to the Constitution of Virginia and who is (i) 18 years of age on or before the day of the election . . . (ii) a resident

---

[1] The statute subsequently specifies that the minimum number of signatures of qualified voters for candidates for the U.S. House of Representatives shall be 1,000 signatures. Va. Code § 24.2-506.

of the Commonwealth and of the precinct in which he offers to vote, and (iii) registered to vote."

Mosley is a prospective candidate for the U.S. House of Representatives in Virginia's Eighth Congressional District. Mosley, however, resides in the Tenth rather than the Eighth District. Plaintiffs' June 3, 2010 complaint alleges that plaintiff Mosley was unlikely to be able to meet the 1,000-signature threshold requirement for being placed on the November 2010 ballot by the June 8, 2010 filing deadline without assistance from plaintiffs Benedict and Redpath, along with other supporters who reside outside the Eighth Congressional District and yet were interested in circulating Mosley's candidate petition. Those out-of-district residents, however, are barred by the text of Va. Code § 24.2-506 from serving as petition circulators for candidates in the Eighth District, including Mosley.

Plaintiffs' complaint seeks declaratory and injunctive relief from Va. Code § 24.2-506's in-district residency requirement for circulators, which plaintiffs assert unduly burdens their rights to cast their votes effectively, to speak and associate for the advancement of political ideas, and to have equal protection of law. Specifically, plaintiffs request a declaration that Virginia's prohibition against the circulation of candidate petitions by out-of-district circulators is unconstitutional and in violation of 42 U.S.C. § 1983, preliminary and permanent

injunctions against enforcement of the prohibition against circulation of candidate petitions by out-of-district circulators, an order prohibiting the Virginia State Board of Elections from refusing to list Mosley on the ballot for the November 2, 2010 general election as a candidate for the U.S. House of Representatives from the Eighth Congressional District, reasonable attorneys fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as may be just and proper.

On August 6, 2010, the Virginia State Board of Elections filed a Motion to Dismiss. On August 23, 2010, plaintiffs filed a Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss. Defendant filed its Reply to [Plaintiff's] Response to Motion to Dismiss on August 27, 2010. Defendant also filed its opposition to plaintiffs' Motion for Summary Judgment on September 3, 2010. Only defendant's Motion to Dismiss is before this Court at this time.

## II. Standard of Review

Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears

4

certain that [the plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in a light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions or to unreasonable inferences from the facts. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

Moreover, the Supreme Court's recent case law has amplified the Rule 12(b)(6) standard, clarifying that "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[I]f the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'- that the pleader is entitled to relief. Iqbal, 129 S. Ct. at 1950. Thus, a plaintiff's complaint must provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. Id. Rather, a complaint achieves factual plausibility only when it contains sufficient allegations supporting the reasonable inference that the facts as alleged give rise to an actionable claim. Id. at 1949; see also Twombly, 550 U.S. at 555.

As the Fourth Circuit has noted in Francis v. Giacomelli,

this analysis is context specific and requires the "reviewing court to draw on its judicial experience and common sense." Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). The Court also stressed in Giacomelli that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

## III. Discussion

In support of its motion to dismiss, defendant raises multiple arguments, including several arguments dealing with preliminary matters and a primary argument addressing the merits of plaintiffs' claims. As a threshold matter, defendant contends that this case is moot and that plaintiffs have failed to allege facts sufficient to establish standing. Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 7. Defendant also argues that plaintiffs' 42 U.S.C. § 1983 claim is barred by the Eleventh Amendment. Id. at 6. On the merits, defendant argues that plaintiffs have failed to state a claim upon which relief can be granted, in light of Supreme Court and Fourth Circuit precedent upholding similar residency requirements in state election laws. Id. at 8. For the reasons explained below, defendant's motion to dismiss this action will be granted.

6

A. Preliminary Matters

    I. Mootness

The Virginia State Board of Elections argues that this action is moot because the June 8, 2010 deadline for obtaining the required 1,000 petition signatures has passed, and Mosley has already been denied access to the ballot for the November 2, 2010 general election on that basis. Defendant therefore contends that this Court lacks jurisdiction to decide this case.

However, given that the November 2, 2010 election has not yet occurred, this controversy remains live, and this Court could still remedy any alleged harm to the plaintiffs by granting plaintiffs' requested relief in the form of a judgment that Va. Code § 24.2-506 is unconstitutional and violates 42 U.S.C. § 1983, coupled with an order prohibiting the Virginia State Board of Elections from refusing to list Mosley's name as a candidate on the ballot.[2] Moreover, as plaintiffs contend, even if the Court were to decide this case after the November 2010 general election, the action could still meet an exception to the general mootness doctrine because it is a controversy that is "capable of repetition yet evading review." See, e.g., S. Pac. Terminal Co. v. ICC, 219 U.S. 498 (1911).

---

[2] Defendant argued, for the first time at the oral hearing on this motion, that such relief would not be proper in light of the fact that absentee balloting for the November 2010 election has already begun. That argument, however, appears nowhere in the briefing on defendant's motion to dismiss.

In this case, Mosley has already been denied access to the ballot for the November 2, 2010 election. However, this issue will continue to arise in future elections as prospective candidates of the Libertarian Party of Virginia and other alternative political parties in Virginia seek access to future ballots. As the Supreme Court articulated in Storer v. Brown, even when an "election is long over, and no effective relief can be provided to the candidates or voters, [the] case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the . . . statutes are applied in future elections." 415 U.S. 724, 737 n.8 (1974) (upholding a California law that prohibited an individual from running for an elected office as an independent candidate within six months of that individual having been a member of a registered political party). Accordingly, this Court will deny defendant's motion to dismiss the instant action as moot.

ii.  Standing

Defendant further argues that plaintiffs have not adequately established standing to challenge Va. Code § 24.2-506, at least on the facts as pled in their complaint. Without "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," a plaintiff has no standing to sue in a federal

8

court." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal citations omitted). Moreover, under <u>Lujan</u>, there must be a causal connection between the injury and the conduct complained of, and it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Id.</u> (internal citations omitted).

Yet as the Virginia State Board of Elections notes, nowhere in the complaint "do the plaintiffs allege facts establishing that 'but for' the restriction on circulators found in Virginia Code § 24.2-506, plaintiff Mosley would have obtained the needed petitions by June 8, 2010." Def.'s Mem. of Law in Supp. of Mot. to Dismiss at 7. For example, the complaint never alleges the number of signatures that Mosley had already received or was likely to receive, nor does it specify the number of those signatures that were or were likely to be witnessed by in-district as opposed to out-of-district circulators. Instead, the only allegation in the complaint is that, as of the date of filing, Mosley was "unlikely" to obtain the needed 1,000 petition signatures by June 8 without the assistance of his out-of-district co-plaintiffs. Pl.'s Compl. ¶ 19. That bare allegation falls short of the requirement that the plaintiff plead plausible facts establishing sufficient harm and causation to support standing to sue.

Both parties to this case have agreed, based upon their

9

filings with respect to plaintiffs' Motion for Summary Judgment, that Mosley ultimately did obtain over 1,000 signatures with the help of out-of-district petition circulators.[3]  Plaintiffs have not sought leave to amend their complaint to include that information, and it therefore is not properly before the court on this motion to dismiss.  Purely on the facts as pled in the complaint, this Court finds that plaintiffs have failed to allege sufficient facts supporting standing to bring this case.  However, in light of the parties' agreement that Mosley ultimately submitted over 1,000 signatures in total, the majority of which were witnessed by out-of-district supporters in violation of Va. Code § 24.2-506, this Court will proceed to address defendant's other arguments to dismiss this action.

### iii.  Eleventh Amendment

Defendant next contends that this suit against the Virginia

---

[3] The parties disagree as to the exact number of total signatures, with plaintiffs alleging that Mosley and his supporters submitted 1,496 signatures, while defendant alleges that he submitted only 1,467 total signatures.  Compare Br. in Supp. of Pl.'s Mot. for Summ. J. and in Opp. to Def.'s Mot. to Dismiss at 3 to Def.'s Opp. to Pl.'s Mot. for Summ. J. at 3. However, under either party's version of the facts, Mosley would have obtained sufficient signatures to clear the 1,000 threshold, provided that signatures collected by out-of-district circulators were permitted to count.  Instead, once the signatures witnessed by out-of-district circulators were discarded, the Virginia State Board of Elections found that Mosley had only submitted 425 properly verified signatures.  See of Pl.'s Mot. for Summ. J. and in Opp. to Def.'s Mot. to Dismiss (attaching a letter from the Secretary of the State Board to Mosley to that effect).

State Board of Elections should be dismissed because the Eleventh Amendment-based doctrine of sovereign immunity bars claims against a state or state agency filed under 42 U.S.C. § 1983. Under the Eleventh Amendment, private individuals may not sue a state in federal court. <u>Bd. of Trustees v. Garrett</u>, 531 U.S. 356, 363 (2001). Furthermore, the Eleventh Amendment bars "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 529 (1997).

In this case, both parties agree that the Virginia State Board of Elections is a state agency established to oversee elections under Va. Code § 24.2-103. <u>See</u> Compl. ¶ 12. It is undisputed that the Board of Elections functions as a quintessential "arm of the State" with respect to approving candidates for official ballots and making other official election-related decisions. <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 280 (1977). A suit against the State Board of Elections is therefore functionally equivalent to a suit against the Commonwealth of Virginia, and the State Board of Elections is entitled to the same protections of sovereign immunity as the Commonwealth itself.

Plaintiffs attempt to rely upon <u>Ex parte Young</u>, 209 U.S. 123 (1908), to argue that they may sue the defendant, an agency of

the Commonwealth, seeking prospective relief only.  However, as
defendant correctly responds, the legal fiction of the Ex parte
Young doctrine only allows suit for injunctive or declaratory
relief against individual officers or officials of a state or
local government, not against a state or state agencies.
Moreover, Congress has never abrogated Eleventh Amendment
immunity for states with regard to 42 U.S.C. § 1983 suits.  See
Demuren v. Old Dominion Univ., 33 F. Supp. 2d 469, 474-75 (E.D.
Va. 1999), aff'd, 188 F.3d 501 (4th Cir. 1999).

     For those reasons, plaintiffs' 42 U.S.C. § 1983 suit against
the Virginia State Board of Elections is barred by the Eleventh
Amendment.  However, plaintiffs have stated in their opposition
to defendant's motion to dismiss that "[i]f a determination were
made that the plaintiffs should have resorted to the legal
fiction of suing the members of the Board in their official
capacities rather than the Board as an entity, plaintiffs would
seek to amend their complaint accordingly." Br. in Supp. of Pls.'
Mot. for Summ. J. and in Opp'n to Def.'s Mot. to Dismiss at 14.
In light of that notification, this Court will therefore also
proceed to consider whether plaintiffs' complaint states a
plausible claim for relief on the merits.

B.  Plaintiffs' Failure to State a Claim upon which Relief
    Can Be Granted

    I.  Parties' Arguments

Plaintiffs claim that the in-district residency requirement
for circulators under Va. Code § 24.2-506 violates their First
and Fourteenth Amendment rights.  In particular, plaintiffs
allege that the residency requirement "impairs plaintiffs' rights
to have equal protection of law, to cast their votes effectively,
and to speak and associate politically, including their
'constitutional right . . . to create and develop [a] new
political party[y].'"  Pls.'s Compl. for Decl. and Inj. Relief at
5 (citing <u>Norman v. Reed</u>, 502 U.S. 279, 288 (1992)).  Plaintiffs
further allege that such impairment of plaintiffs' rights cannot
be justified by a sufficient state interest.  <u>Id.</u>

Plaintiffs also argue that Va. Code § 24.2-506 creates a
constitutional anomaly because it requires circulators to reside
in the congressional district where they are circulating
petitions, while under the Constitution, candidates for Congress
themselves need not reside in those districts.[4]  <u>See</u> Br. in Supp.
of Pl.'s Mot. for Summ. J. and in Opp. to Def.'s Mot. to Dismiss
at 7-8.  In this case, plaintiff Mosley is a resident of the
Tenth Congressional District in Virginia but is seeking to run

---

[4] Article I of the U.S. Constitution requires only that a
Representative in Congress be 25 years old, a U.S. citizen for
seven years, and "an Inhabitant of that State in which he shall
be chosen."  U.S. Const. Art. I, § 2, cl. 2.

for election in the Eighth Congressional District. Under the
Constitution, he is permitted to do so, but under Va. Code
§ 24.2-506, he is not permitted to serve as a circulator of his
own petition, nor are any other supporters who reside in Virginia
but do not live in the Eighth Congressional District allowed to
circulate his petition. Plaintiff therefore argues that it is
both anomalous and unconstitutional for Virginia's state election
laws to impose in-district residency requirements for
circulators.

In support of its motion to dismiss, the Virginia State
Board of Elections argues that plaintiffs have failed to state a
claim upon which relief can be granted. Defendant contends that
the Virginia statute imposes only a modest burden on plaintiff
Mosley's access to the ballot and upon his co-plaintiffs'
constitutional rights. See Def.'s Reply in Resp. to Pl.'s Opp.
to Mot. to Dismiss at 5-7. Defendant further argues that the
residency restriction for circulators is justified by the
Commonwealth's important interests in ensuring an efficient and
fair electoral process in district-wide congressional elections.
Id.


        ii.   Framework for Review

Both parties agree that the Supreme Court has set forth a
balancing test in Anderson v. Celebrezze, 460 U.S. 780 (1983),
which trial courts must use in evaluating constitutional
challenges to state-imposed restrictions on access to the ballot.

14

The Fourth Circuit has consistently applied that test in cases involving constitutional challenges to voting regulations. See, e.g., Barr v. Ireland, 575 F. Supp. 2d 747, 756 (S.D. W. Va. 2008); Levy v. Jensen, 285 F. Supp. 2d 710, 715 (E.D. Va. 2003). Under the Anderson test:

> [The Court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged [restriction] is unconstitutional.

Anderson, 460 U.S. at 789 (striking down Ohio's filing deadline for independent candidates, which was earlier than the deadline for candidates for major parties); see also Burdick v. Takushi, 504 US 428, 433-34 (1992) (upholding Hawaii's ban on write-in voting in state and federal elections).

As the Supreme Court has observed, "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." Burdick, 504 U.S. at 433. Therefore, Anderson and Burdick together establish a sliding scale of judicial review, ranging from strict scrutiny to rational basis review, depending upon the particular facts and circumstances of

15

each case.  Under the <u>Anderson-Burdick</u> framework, the

"rigorousness of [a court's] inquiry into the propriety of a state

election law depends upon the extent to which a challenged

regulation burdens First and Fourteenth Amendment rights."  <u>Id.</u> at

434.  When those rights are "subjected to severe restrictions, the

regulation must be narrowly drawn to advance a state interest of

compelling importance.  But when a state election law provision

imposes only reasonable, nondiscriminatory restrictions . . .

the state's important regulatory interests are generally

sufficient to justify the restrictions."  <u>Id.</u> (citing <u>Anderson</u>,

460 U.S. at 788).

     In this case, defendant persuasively argues that Virginia's

requirement that prospective candidates file a petition with 1,000

signatures, gathered and witnessed by residents of the district

where they intend to run, is not a "severe restriction" on

plaintiffs' constitutional rights under either the First or the

Fourteenth Amendments.  <u>See</u> Def.'s Reply to Pl.'s Opp. to Mot. to

Dismiss at 2.  The district residency requirement at issue imposes

no discriminatory restrictions on Mosley as a candidate or

advocate, nor does it deny third-party candidates access to the

ballot.  Rather, Va. Code § 24.2-506 is a neutral requirement that

applies equally to all potential candidates, regardless of

political party.  "Under traditional equal protection principles,

legislatures are presumed to have acted constitutionally, and this

presumption is overcome 'only when the challenged statute places

burdens upon suspect classes of persons or on a constitutional

right that is deemed to be fundamental.'" <u>Amarasinghe v. Quinn</u>,
148 F. Supp. 2d 630, 635 (E.D. Va. 2001) (Friedman, J.) (applying
rational basis review and denying a motion for a preliminary
injunction in a challenge to Va. Code § 24.2-506's 1,000 signature
requirement).

Plaintiffs have not alleged any facts sufficient to establish
such a discriminatory burden in this case, and "[t]he fact that
[Mosley] has chosen to run for political office independent of a
party affiliation does not place him in a suspect class triggering
strict scrutiny." <u>Lux v. Rodrigues</u>, – F Supp. 2d. –, No.
3:10CV481-HEH, 2010 WL 3385181, at *6 (E.D. Va. Aug. 26, 2010)
(Hudson, J.) (rejecting a First and Fourteenth Amendment challenge
to Va. Code § 24.2-506's in-district residency requirement that
was identical in substance to that raised by plaintiffs here).[5]
Strict scrutiny review is therefore not appropriate under the
Fourteenth Amendment in this case.

In light of precedent in the Fourth Circuit, plaintiffs have
also failed to establish a "severe restriction" on their First
Amendment rights for <u>Anderson-Burdick</u> purposes.  <u>See</u> <u>Libertarian
Party of Va. v. Davis</u>, 766 F.2d 865 (4th Cir. 1985) (finding no
severe burden and declining to apply strict scrutiny to a Virginia
law requiring in-district residency for petition circulators in
statewide elections).  As several other decisions of this district
have held, Va. Code § 24.2-506 does not unduly restrict a

---

[5] Tellingly, plaintiffs do not cite a single case finding a
neutral ballot restriction such as the one at issue in this case
violative of the Fourteenth Amendment's Equal Protection Clause.

candidate's ability to communicate with his prospective
constituents, nor does it unduly limit the ability of residents of
a congressional district to sign petitions in support of a
prospective candidate. <u>See, e.g.</u>, <u>Lux</u>, 2010 WL 3385181, at *5;
<u>Wood v. Quinn</u>, 104 F. Supp. 2d 611 (E.D. Va. 2000) (Spencer, J.),
<u>aff'd</u>, 230 F.3d 1356 (4th Cir. 200) (per curiam) (applying
rational basis review and upholding Va. Code § 24.2-506's
numerosity and geographical distribution requirements);
<u>Amarasinghe</u>, 148 F. Supp. 2d at 635. Rather, under Va. Code
§ 24.2-506, Mosley is free to communicate his thoughts and ideas
to voters, and voters in the Eighth Congressional District are
free to express their support for Mosley's candidacy, provided
only that another person qualified to vote in the Eighth District
is present when any voters sign Mosley's candidate petition.

　　　　Moreover, as defendant correctly argues, plaintiff Mosley and
his other out-of-district supporters could still work for the
Mosley campaign and assist in circulating his petition, so long as
someone eligible to vote in the Eighth Congressional District
accompanied them and was present to witness any voters'
signatures. <u>See</u> Va. Code. § 24.2-506. Alternatively, Mosley
could simply have had one or more persons from the Eighth
Congressional District, such as plaintiff Barrett, obtain and
witness the minimum number of required signatures. <u>Id.</u> Finally,
even were Mosley unable to obtain the required signatures, he
could still have pursued available procedures for becoming a

write-in candidate, and his supporters could have espoused their support for him by writing in their votes on his behalf.

Va. Code § 24.2-506's in-district residency requirement therefore does not rise to the level of "subject[ing plaintiffs' constitutional rights] to *severe* restrictions." Burdick, 504 U.S. at 434 (emphasis added). As the Supreme Court has noted, "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" Clements v. Fashing, 457 U.S. 957, 963 (1982) (quoting Bullock v. Carter, 405 U.S. 134 (1972)). Judges in this district have considered challenges to the constitutionality of Va. Code § 24.2-506 three times, and each time have declined to apply strict scrutiny to their review of that statute, instead employing rational basis review. See Lux, 2010 WL 3385181, at *5; Wood, 104 F. Supp. 2d at 615; Amarasinghe, 148 F. Supp. 2d at 635. Accordingly, this Court will analyze plaintiffs' constitutional challenges under the lens of the Anderson-Burdick version of rational basis review, under which "a state's important regulatory interests" will suffice to justify any neutral, nondiscriminatory ballot requirements. Burdick, 504 U.S. at 434 (citing Anderson, 460 U.S. at 788).

### iii. Analysis

Applying the Anderson-Burdick framework to this case in light of Supreme Court and Fourth Circuit precedent reveals that plaintiffs have failed to state a valid legal claim upon which

they are entitled to relief.  Rather, Virginia's in-district residency requirement for circulators, like most electoral and ballot restrictions, is justified as a matter of law by the state's legitimate and important regulatory interests in safeguarding the electoral process.  "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Storer, 415 U.S. at 730.  The First and Fourteenth Amendments protect the freedom to associate for political purposes, but that freedom is not absolute and is "necessarily subject to qualification if elections are to be run fairly and effectively." Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986); see also Wood, 104 F. Supp. 2d at 614.

While every statutory constraint on the circulation of a candidate's ballot petition implicates the First and Fourteenth Amendments to some degree, this Court finds that the in-district residency restrictions imposed by Va. Code § 24.2-506 serve a reasonable regulatory interest.  The in-district residency requirement is a neutral, non-discriminatory measure designed to ensure efficient and fair elections and to serve an important state interest in protecting the political process and "avoiding confusion caused by an overcrowded ballot." Wood, 104 F. Supp. 2d at 614-15 (citing Clements, 457 U.S. at 965).  Courts have historically recognized that states have a valid interest "in keeping [their] ballots within manageable, understandable limits."

20

_Lubin v. Panish_, 415 US. 709, 715 (1974); see also _Anderson_, 460 U.S. at 788, n.9 ("The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."). To that end, the Supreme Court has upheld ballot access provisions that may "condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." _Munro_, 279 U.S. at 193.

Controlling case law in the Fourth Circuit, _Libertarian Party of Va. v. Davis_, 591 F. Supp. 1561, 1564 (E.D. Va. 1984), aff'd, 766 F.2d 865, 869 (4th Cir. 1985), also supports dismissing this action for failure to state a claim. In _Davis_, the Fourth Circuit found that by comparison to many other states, Virginia's process for obtaining access to the ballot is "one of the least burdensome in the nation." 766 F.2d at 868. The Fourth Circuit then upheld a Virginia statute analogous to the one before this Court, which required petition circulators for statewide elections to reside in the same district as the petition signers whose signatures they witnessed. The _Davis_ court held that the residency requirement met an "important" and indeed "compelling" interest in ensuring that potential candidates have a "significant modicum of support before being granted a place on the state's ballot," and thereby avoiding "confusion, deception, and even frustration of the democratic process at the general election."

_Id._ Given those important state interests, the Fourth Circuit found that the state had a legitimate basis for requiring that "within each congressional district there [be] at least one 'activist' sufficiently motivated to shoulder the burden of witnessing signatures" for candidates' petitions. _Id._ at 870.

_Davis_ dealt with a district residency requirement for statewide elections, while the plaintiffs here challenge a different residency requirement for circulators of petitions in single-district congressional races. The rationale in _Davis_, however, is no less compelling as applied to the instant controversy. Indeed, _Davis_'s reasoning applies with even greater force here, where the state seeks to ensure that candidates have a significant modicum of support in the sole district where the election is taking place, and whose residents the candidate would ultimately represent if elected. Otherwise, a candidate might gain access to the ballot in a district without having a single in-district supporter or group of supporters committed enough to obtain and witness the minimum number of signatures. That is particularly problematic where, as here, the candidate himself resides outside the district where he wishes to run for office.

Plaintiffs argue that the rationale in _Davis_ has been undermined by recent Supreme Court precedent, case law in other circuits, and the Virginia legislature's amending the statute at issue in _Davis_ to remove the in-district residency requirement for statewide races. None of those arguments holds water. First, the

22

mere fact that the legislature has amended Va. Code § 24.1-159 to remove the residency requirement does not in any respect alter the precedential status of the Fourth Circuit's decision in <u>Davis</u> upholding the previous statute's constitutionality.

Moreover, the Supreme Court has never struck down a residency requirement like the one at issue in this case as unconstitutional, either before or after <u>Davis</u>. Plaintiffs repeatedly cite to <u>Buckley v. Am. Constitutional Law Found., Inc.</u>, 525 U.S. 182, 183 (1999) for the propositions that "[p]etition circulation is core political speech" and that any restrictions on petition circulators therefore violate the First Amendment. <u>See</u> Br. in Supp. of Pl.'s Mot. for Summ. J. and in Opp. to Def.'s Mot. to Dismiss at 10. However, <u>Buckley</u> dealt with a Colorado statute that required not only that petition circulators be registered voters, but also that they wear identification badges bearing their names, and that they publicly report their names, addresses, and the amount of money that they were paid to participate in the petition circulation process. 525 U.S. at 186. By contrast, Va. Code § 24.2-506 is far less onerous: it does not require that petition circulators be registered to vote, nor does it require them to identify themselves or make any sort of public disclosures. Under the terms of the statute, Virginia circulators need only be residents of the districts in which they witness signatures and *qualified* to register to vote in those districts. <u>See</u> Va. Code § 24.2-506.

Moreover, far from calling the rationale of <u>Davis</u> into question, *dicta* in the <u>Buckley</u> opinion in fact expresses the Supreme Court's general support for residency requirements. <u>See, e.g.</u>, 525 U.S. at 197 (assuming that a mere "residence requirement would be upheld as a needful integrity-policing measure"); <u>see also id.</u> at 195, n.16 (expressing support for statutes under which "the merely voter eligible are included among petition circulators"). Specifically, with respect to residency requirements for circulators in statewide elections, the <u>Buckley</u> Court noted that states have valid interests in "seek[ing] to ensure that circulators will be amenable to the Secretary of States's subpoena power, which in these matters does not extend beyond the State's borders." <u>Id.</u> at 196. <u>Buckley</u> therefore only buttresses the conclusion reached by the Fourth Circuit in <u>Davis</u>, a decision which remains good law in this jurisdiction.

In their opposition to defendant's Motion to Dismiss, plaintiffs do not cite any decisions of the Fourth Circuit or of this district that question, distinguish, or undermine the <u>Davis</u> holding. Rather, they cite only to cases from other jurisdictions presenting factual scenarios distinguishable from the instant controversy. For example, in <u>Krislov v. Rednour</u>, 226 F.3d 851, 860 (7th Cir. 2000), the Seventh Circuit struck down a law that included not only a district residency requirement for circulators, but also a voter registration requirement, and a more onerous signature requirement under which candidates had to gather two-and-a-half times more signatures as a percentage of the

24

electorate than prospective congressional candidates in Virginia's Eighth District must obtain.[6] Similarly, <u>Lerman v. Board of Elections</u>, 232 F.3d 135, 139 (2d Cir. 2000), involved requirements that circulators be notary publics, commissioners of deeds, or duly qualified and enrolled voters of the same political party as the petition signers. Under the statute at issue in <u>Lerman</u>, candidates were also required to obtain signatures from five percent of the district's electorate, or twenty-five times the proportion of signatures required here. <u>Id.</u> Meanwhile, <u>Bogaert v. Land</u>, 572 F. Supp. 2d 883, 898 (W.D. Mich.), involved a requirement that recall petition circulators be registered to vote *and* residents of the legislative district where the recall is proposed. The challenged law in <u>Bogaert</u> also required that circulators obtain signatures from a full twenty-five percent of the electorate, or 125 times the percentage required here. <u>Id.</u>

The holding in <u>Davis</u> expressly rested, at least in part, on the Fourth Circuit's assessment that Virginia's ballot access requirements, including its residency requirements for circulators, were "indulgent" by comparison to those in other states. 766 F.2d at 869. The unique leniency of Virginia's petition signature requirements means that decisions from other circuits addressing more burdensome electoral requirements in other states are simply inapposite to this case. Plaintiffs'

---

[6] Prospective candidates like Mosley must obtain 1,000 signatures, or 0.2 percent of the Eighth District electorate, in order to run for a seat in the U.S. House of Representatives from that District.

repeated citations to non-binding authority in other jurisdictions simply do not disturb the controlling weight of <u>Davis</u> in this action. Moreover, in the years since <u>Buckley</u>, other federal courts have in fact upheld residency requirements for circulators in statewide races, along lines of reasoning very similar to the Fourth Circuit's rationale in <u>Davis</u>. <u>See, e.g.</u>, <u>Initiative & Referendum Inst. v. Jaeger</u>, 241 F.3d 614, 617 (8th Cir. 2001) (affirming a residency requirement, finding that it was important for discouraging fraud); <u>Kean v. Clark</u>, 56 F. Supp. 2d 719, 728-29 (S.D. Miss. 1999) (same); <u>Initiative & Referendum Inst. v. Sec'y of State</u>, 1999 U.S. Dist. LEXIS 22071 at *43-48 (D. Me. Apr. 23, 1999) (same); <u>see also</u> <u>Groene v. Gale</u>, 2010 U.S. Dist. LEXIS 65821 (D. Neb. July 1, 2010) (denying a motion for a preliminary injunction in a case challenging a state residency requirement for petition circulators).

Finally, if there were any doubt that <u>Davis</u> is controlling and indeed dispositive authority in this case, the recent decision in <u>Lux v. Rodrigues</u>, — F. Supp. 2d —, 2010 WL 335181 (E.D. Va. Aug. 26, 2010) (Hudson, J.) dispels it. Relying upon <u>Davis</u>, <u>Lux</u> rejected an identical constitutional attack upon the precise residency requirement for petition circulators that plaintiffs challenge in this action. <u>See</u> 2010 WL 3385181, at *6. Specifically, Judge Hudson applied rational basis review and found that the in-district residency requirement in Va. Code § 24.2-506 serves a legitimate state purpose and does not impose any severe burden on the plaintiffs' First or Fourteenth Amendment rights.

_Id._ Citing _Davis_, the _Lux_ decision states that "the U.S. Court of Appeals for the Fourth Circuit appears to have spoken clearly" and that "the restrictions imposed by Section 24.2-506 [of the Virginia Code] appear to serve a reasonable regulatory interest." _Id._ Accordingly, the _Lux_ court held that the plaintiffs' "[c]omplaint fails to state a claim for relief that is plausible on its face." _Id._ at *7.

The complaint in _Lux_ is virtually indistinguishable from plaintiffs' complaint in this case, both on its facts and in its First and Fourteenth Amendment arguments. Therefore, this Court will follow the well-reasoned conclusion in _Lux_ and similarly find that plaintiffs' complaint does not assert a plausible entitlement to relief. Accordingly, the Virginia State Board of Election's Motion to Dismiss will be granted.

## IV. Conclusion

For the reasons stated in open court and in this Memorandum Opinion, defendant's Motion to Dismiss will be granted by an Order to be issued with this Memorandum Opinion.

Entered this _16_ day of September, 2010.

/s/

Alexandria, Virginia

Leonie M. Brinkema
United States District Judge

27